**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Susana Castro individually and on behalf of all others similarly situated, | ) Case No.: 1:25-cv-09570 |
| | ) |
| Plaintiff, | ) **CLASS ACTION COMPLAINT** |
| | ) |
| v. | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| BESTWAY (USA) Inc. | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

Plaintiff Susana Castro ("Plaintiff" or "Castro"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Bestway (USA) Inc. ("Bestway" or "Defendant")[1] and alleges the following based on personal knowledge as to herself, and as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.      This is a proposed class action arising from the dangerous design and prolonged concealment of a known defect in certain Bestway-branded, above-ground pools ("Products" or "Pools")[2]. Specifically, Defendant designed, marketed, distributed, and sold the Pools with compression straps located external to the pool's vertical support poles ("Defect")—design elements that created an accessible foothold for toddlers to climb into the pool, even when the ladder is removed, resulting in fatal drownings as a direct result of this hazard.[3]

---

[1] Plaintiff reserves the right to amend the complaint to include any additional responsible parties or entities as the evidence or information may arise throughout discovery.

[2] The Recall affects Bestway-branded pools 48 inches and taller—including Power Steel and Steel Pro models sold between 2008 and 2024 under the Bestway and Coleman name ("Product(s)" or "Pool(s)"). Plaintiff reserves the right to amend this complaint to include additional products arising from the discovery. *See,* Bestway product recall.

[3] *See,* CPSC recall press release, https://www.cpsc.gov/Recalls/2025/bestway-and-other-manufacturers-recall-pools-after-drownings, (last accessed July 24, 2025). *See also,* Houston Chronicle – *5 million above ground pools recalled after 9 children drowned in 15 years, US agency reports,* (published on July 21, 2025),



*Image 1.* CPSC example of a child using the compression strap to stand on above-ground pool, illustrating the hazard involved. ([https://www.cpsc.gov/Recalls/2025/Bestway-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002](https://www.cpsc.gov/Recalls/2025/Bestway-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002)).

2.      On July 21, 2025, the CPSC, together with Bestway and other manufacturers, announced the recall ("Recall") of approximately 5 million above-ground pools sold at major retailers nationwide since 2002, resulting in at least nine deaths of children aged 22 months to 3 years ("Recall Notice") between 2007 and 2022. These Pools were sold nationwide for approximately $400 to over $1,000.[4]

---

[https://www.houstonchronicle.com/news/houston-texas/trending/article/millions-above-ground-pools-recalled-9-children-20778185.php](https://www.houstonchronicle.com/news/houston-texas/trending/article/millions-above-ground-pools-recalled-9-children-20778185.php), (last accessed July 24, 2025).

[4] *See,* CPSC recall press release – Recall Notice.

3.     The U.S. Consumer Product Safety Commission ("CPSC") Acting Chairman Peter A. Feldmann and Commissioner Douglas Dziak described the Recall as "long-overdue" and stated the Defect was "a textbook example of a dangerous design flaw, plainly visible and clearly hazardous".[5]

4.     The Recall shows that the Pools' design flaw was not inherent or unavoidable.[6]

  

*Image 2.* Bestway illustration of the recalled versus the non-recalled pool models. (https://bestwayusa.com/recalls-pool-strap).

5.     Per the Recall Notice, customers were instructed first to identify if their above-ground pool was affected by the Recall by following a 5-step process, and once confirmed, they would have to proceed to a separate registration page "to provide the information needed to receive a free repair kit".[7] The repair kit consists of a mere rope that will allegedly substitute for the compression straps, maintaining the pool's structural integrity.[8]

6.     Telingly, newer above-ground pools sold by Bestway do not include this rope to maintain the pool's structural integrity. Instead, the new version of the pool is designed with the

---

[5] *See, Statement of Acting Chairman Peter A. Feldman and Commissioner Douglas Dziak: Deadly Design in Chinese Pools Triggers Massive Recall; CPSC Leaders Cite Years of Inaction,* (published on July 21, 2025), https://www.cpsc.gov/About-CPSC/Commissioner/Douglas-Dziak-Peter-A-Feldman/Statement/Statement-of-Acting-Chairman-Peter-A-Feldman-and-Commissioner-Douglas-Dziak-Deadly-Design-in-Chinese-Pools-Triggers-Massive-Recall-CPSC-Leaders-Cite-Years-of-Inaction, (last accessed on July 24, 2025).

[6] *See,* Bestway product recall, https://bestwayusa.com/recalls-pool-strap, (last accessed on July 24, 2025).

[7] *See,* Bestway product recall; *see also*, https://bwrecallsupport.expertinquiry.com/?lang=en.

[8] *Id.*

compression strap placed internally—behind the pool's vertical support poles—woven into the pool wall, where children are unable to use them as a foothold to climb into the pool.[9] This confirms Defendant is well aware that the rope is not an adequate remedy for the Defect.

7. The Recall fails to offer *any monetary relief* to Plaintiff and Class Members who purchased the defective Pools.

8. Moreover, the Recall was announced far too late. The CPSC confirmed that the Pools' drowning hazard had been known since 2007. As detailed in the Recall Notice:

> CPSC believes that nine children between the ages of 22 months and 3 years old have drowned after gaining access to the pools via the footholds. The incidents occurred in California, Texas, Florida, Michigan, Wisconsin and Missouri between 2007 and 2022.

> CPSC is also aware of three other incidents in 2011 and 2012 where children who gained access to the recalled pools were reported to have previously used the compression strap to gain entry to the pool.[10]

9. Defendant knew or should have known of these incidents, yet it did nothing. Indeed, despite reported incidents dating back to 2007, Defendant failed to issue any warning or make design changes to protect the lives of children and continued profiting from sales to consumers throughout the United States.

10. Even more egregious, Bestway knowingly continued to design, manufacture, market, and sell the defective Pools with an external compression strap—functioning as a built-in ladder— *after* a $25 million lawsuit in 2019 over the drowning of a two-year-old girl who climbed into the pool by using that very strap, positioned just a foot above the ground, as a step to gain access.[11]

---

[9] *See,* Bestway site, https://bestwayusa.com/bestway-steel-pro-max-15-x-48-above-ground-pool-set-56690e, (accessed on August 1, 2025).

[10] *See,* Recall Notice, https://www.cpsc.gov/Recalls/2025/Bestway-Intex-and-Polygroup-Recall-Certain-Above-Ground-Pools-48-Inches-and-Taller-Due-to-Drowning-Hazard-Nine-Deaths-Reported-Five-Million-Pools-Sold-Since-2002.

[11] *See,* Parents Awarded $25M for child's drowning in defective pool design: Recods, (published March 4, 2025), https://fox2now.com/news/missouri/parents-awarded-25m-for-childs-drowning-in-warren-county/ (last accessed _____).

11.      Bestway is one of the world's leading companies in the inflatable leisure and outdoor product market, with a long-standing reputation for designing and manufacturing pools, airbeds, and other recreational equipment. Bestway's global research and engineering expertise underscore that Defendant should have known the risks associated with the external strap design.[12]

12.      As an example, the following are statements made by Bestway on their website in support of its leading market position: "[w]e proudly develop and manufacture our products in-house, ensuring our quality goods reach customers with care"; "[w]e're committed to innovating and leading the industry through our research, design, development and manufacturing"; "[e]very department at Bestway works closely together – from our technology and quality assurance centers to our laboratories and vertically integrated manufacturing systems to our after-sales service centers around the globe"; "[a]t Bestway, we hold ourselves and our products to a very high standard"; and [t]he satisfaction and safety of our customers is a top priority". [13]

13.      The Defect existed at the point of purchase.

14.      When purchasing the Products, Plaintiff and Class Members trusted Defendant and its representations that the Pools would be safe to use as intended.

15.      Had Plaintiff and Class Members known about the Defect, they would not have purchased the Pools or paid less.

16.      Defendant's Recall is inadequate and fails to provide any monetary relief to purchasers.

17.      This action seeks to hold Defendant accountable for its conscious decision to use a dangerous design, conceal the known hazard associated with the Defect, and its insufficient recall remedy.

---

[12] *See*, Bestway site, https://bestwayusa.com/our-story, (accessed on July 24, 2025).

[13] *See*, Bestway site, https://bestwayusa.com/our-mission (last accessed on July 24, 2025); *see also*, https://bestwayusa.com/recall-and-safety (last accessed on July 24, 2025).

## PARTIES

### *Plaintiff Susana Castro*

18.     At all relevant times, Plaintiff Susana Castro was and is a resident and citizen of Chicago, Illinois, who purchased two recalled Bestway-branded above-ground pools for her and her family to use. Plaintiff was unaware of the serious safety hazard associated with the external strap design. Plaintiff bought the first recalled Pool, a Bestway Power Steel above-ground pool model, on April 20, 2023, at the Sam's Club in Vernon Hills, Illinois. Plaintiff paid $439.98. On July 21, 2024, Plaintiff purchased another recalled Pool, a Bestway Power Steel, for $240.46 on Walmart's website.

19.     At the point of purchase, Plaintiff read and reasonably relied on Defendant's representations that the Pool was safe to use for her and her family.

20.     Plaintiff Susana Castro would not have purchased or used the Pools if she had known about the Pools' Defect and that the Pool was unsafe to use.

21.     Plaintiff was only aware of the Recall when she read about the drowning incidents online. Plaintiff promptly took part in the Recall as instructed by Defendant, by placing her information on the website provided. Nevertheless, to the filing date, Defendant has not contacted Plaintiff regarding the defective Product or provided any remedy for the Recall.

### *Defendant Bestway (USA), Inc.*

22.     Defendant Bestway (USA) Inc. is a Delaware corporation headquartered in Chandler, Arizona. According to information and belief, Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale, and distribution of the recalled Products.

23.     Upon belief or information, until July 2025, Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold the recalled Pools in all 50 states, in stores such as Walmart, Target, Bed Bath & Beyond, Sam's Club, among others.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

25.     This Court has personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

26.     Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendant regularly transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

27.     Venue is also proper because Plaintiff is a resident and citizen of this District.

### COMMON FACTUAL ALLEGATIONS

28.     Defendant Bestway is a leading manufacturer of above-ground pools and outdoor inflatable products, with a global footprint spanning over 110 countries and over 1,000 product lines. Since its founding in 1994, Bestway has emphasized innovation and structural design in its pool products, presenting itself as a trusted brand in pool safety and quality.[14]

29.     From approximately 2008 through 2024, Bestway manufactured and sold above-ground pool models, including but not limited to Power Steel®, Steel Pro MAX™, and Coleman® Power Steel™ series, which featured exterior "compression straps" or support belts designed to maintain circular pool wall stability.[15]

30.     These straps, which wrap around the Pool's circumference at mid-height, protrude outward from the pool frame and are accessible from ground level. According to the CPSC, this strap creates an unintended foothold that allows children to climb into the pool without a ladder, creating a significant drowning hazard.[16]

31.     The CPSC announced a nationwide recall of the affected Bestway pools on **July 21, 2025**, affecting approximately **5 million** above-ground pool units sold in the United States. The recall

---

[14] *Id.*

[15] *See*, Bestway Recall, https://bestwayusa.com/recalls-pool-strap, (last accessed August 8, 2025).

[16] *See,* Recall Notice.

covers pools sold between 2002 and 2024 through major retailers including Walmart, Amazon, and others.[17] This Recall includes Bestway and other manufacturers that manufactured and sold above-ground pools with the same Defect. Specifically, Bestway's recalled models were sold between 2008-2024.

32.    At least **nine children between the ages of 22 months and 3 years** drowned in these recalled pools between 2007 and 2022. These deaths occurred in six different states: California, Florida, Michigan, Missouri, Texas, and Wisconsin.[18]

33.    In addition, the CPSC confirmed at least **three near-drowning incidents** associated with the recalled pool design in 2011 and 2012.[19]

34.    Moreover, in 2019, Bestway was found liable and ordered to pay $25 million for the drowning of a two-year-old toddler—a tragedy caused by the same Defect Bestway knew about yet continued to design and profit from for years.

35.    The Defect existed throughout the 16-year span of the product's availability. Notably, Bestway had access to incident data, consumer feedback, and industry standards for pool safety that should have led to corrective design action far earlier, and long before so many children died.[20]

36.    By contrast, other Bestway pool models not subject to the Recall do not feature an exterior compression strap, and alternative designs have long been available that do not present the same scalable risk. [21]

37.    Despite having the capability and expertise to mitigate the risk, Bestway failed to redesign the product, remove the external strap, or issue sufficient consumer warnings over two decades. This delay contributed to the continued availability of defective pools and the repeated loss of lives.

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

38.     On information and belief, Bestway did not issue any proactive safety alert to consumers before the joint CPSC recall announcement, nor did it take action to limit sales or require modifications for older units. Additionally, on information and belief, Bestway has not removed or destroyed all defective Products available for purchase, placing unknowing families and their children in great danger. Below is an example of how some websites still advertise and sell the Recalled Pools with exterior compression straps—and on sale.



*Image 3.* The Bed Bath & Beyond website is selling the defective Pool on sale. As shown in the image, the compression straps are external to the vertical poles on the pool wall, displaying the hazard. The arrows in the image were included to demonstrate the hazard-Defect. (https://www.bedbathandbeyond.com/Sports-Toys/Bestway-Steel-Pro-MAX-16x48-Round-Above-Ground-Swimming-Pool-with-Pump-Cover/41152733/product.html?opre=1&option=85236245, last accessed on August 8, 2025.)

39.     The Pools are marketed for the intended use of children and adults with children, stating, for example: "[k]ids and adults of all ages will enjoy swimming and splashing all summer long in this above-ground pool", and "[i]t doesn't get any better than having your very own pool in your backyard".[22]

---

[22] *See*, Bestway site, https://bestwayusa.com/bestway-steel-pro-max-15-x-48-above-ground-pool-set-56690e (last accessed August 1, 2025).

40.     Defendant marketed the Products as safe and durable pools compared to others in the market, stating, for example, "[q]uickly click each support piece into place for a safe and secure connection"; and that the Pool "offer[ed] an ultra durable option at a great price".[23]

41.     Notably, the Pool's Owner's Manual has a section titled "Prevent Young Children from Gaining Access to Pool". *See,* **Exhibit 2** (Pool Owner's Manual). This or any section of the Manual gives proper warning or notice that children can use the external compression straps to access the pool. Instead, Defendant states the following warnings regarding the former: "**[r]emove pool ladders before leaving pool. Toddlers can climb the ladder and get into pool. Position furniture away from pool so that children cannot climb and gain access to pool. When leaving pool, remove floats and toys from pool that might attract a child."[24]**

42.     The CPSC recall remedy is a free "repair kit" with a rope to replace the compression strap and installation instructions. However, this purported remedy requires affirmative consumer action and does not automatically fix the hazard.[25] Furthermore, the repair entails the customer placing a piece of rope to allegedly substitute for the structural integrity capability of the compression straps. Bestway has yet to provide evidence that the "repair" would allow the Product to function as intended and not present additional issues. As detailed above, Bestway is currently selling similar above-ground pools with a strap located behind the pool's vertical support poles and woven into the pool wall, where children cannot use the straps as a foothold to enter the pool.[26]

---

[23] *Id.*

[24] *See, Exhibit 2*, Owner's Manual at page 4 (emphasis added).

[25] *Id.*

[26] https://bestwayusa.com/bestway-steel-pro-max-15-x-48-above-ground-pool-set-56690e.



*Image 4.* Bestway Steel Pro Max above-ground pool with the internal compression straps being sold on their website. The arrows demonstrate the compression straps internally situated for the pool's structural integrity. *See,* https://bestwayusa.com/bestway-steel-pro-max-15-x-48-above-ground-pool-set-56690e, (last accessed August 1, 2025).

43. This confirms Defendant is well aware that the rope is not an adequate "fix" or remedy for the Defect. Defendant would naturally be selling its current above-ground pools with that feature if it were. Instead, the rope was a stealthy way for Defendant to escape liability for the Defect, and avoid refunding consumers for the premium price of the dangerous and defective Products.

44. The known risk of drowning due to the Defect, the decades-long availability of safer designs, Bestway's dominant position in the pool market, and the likelihood that a substantial portion of defective products remain in use all support Plaintiff's allegations that Bestway acted with knowledge of the Defect yet still represented, marketed, distributed, and sold unsafe Pools.

45. Contrary to Defendant's representations to reasonable consumers promising safety and durability, Defendant chose to ignore the serious safety hazards presented by the uniform Defect present in each Pool and industry guidance and recommendations for safe pool use. In doing so, Defendant revealed that it is, in reality, committed to its own profits—not people and their safety.

46.     Since before the Pools were sold and even designed, Defendant has been well aware of the guidance and recommendations of organizations within its industry committed to safety, namely CPSC, which releases an annual drowning report with pool safety guidelines.[27]

47.     Defendant also knew or should have known that the Pools had similar design elements as those of its above-ground pool competitors that reported drowning incidents from 2007, also subject to the Recall. Consequently, the similar design in their defective Products creates similar risks in those products—drowning hazard. Consequently, Defendant was aware of the Pools' drowning risks. However, Defendant continued to market, sell and profit from the defective Products.

48.     Defendant, during all relevant times, was under a federal duty to evaluate the Pools for unreasonable risks. Specifically, federal regulations require "[e]very manufacturer, distributor, and retailer of a consumer product distributed in commerce who obtains information which reasonably supports the conclusion that its product creates an unreasonable risk of serious injury or death is required to notify the [CPSC] immediately."[28] Defendant is obligated under this regulation to determine whether a product presents an unreasonable risk by examining the "utility of the product or the utility of the aspect of the product that causes the risk, the level of exposure of consumers to the risk, the nature and severity of the hazard presented, and the likelihood of resulting serious injury or death."[29]

49.     By conducting this required analysis of the Pools, Defendant knew, or should have known, that the Pools were defective, and yet took no action to eliminate the Defect or, at the very least, adequately warn consumers of the Defect.

---

[27] *See,* CPSC Pool Safety Guidelines, https://www.poolsafely.gov/2025/07/11/cpsc-releases-annual-drowning-report-emphasizes-importance-of-pool-barriers-pool-safely-blog/, (last accessed August 1, 2025).

[28] *See.* 16 C.F.R. § 1115.6(a) (citing 15 U.S.C. 2064(b)(3)).

[29] *See,* 16 C.F.R. § 1115.6(b).

50.     Additionally, the Federal Hazardous Substance Act, codified at 15 U.S.C. §§ 1261, *et seq*. ("FHSA") prohibits the sale of misbranded hazardous substances. *See id*. § 1263. A misbranded hazardous substance is, among other things:

> "[A] hazardous substance (included a toy, or other article intended for use by children, which is a hazardous substance. . . ), intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation . . . or if such substance . . . fails to bear a label—(1) which states conspicuously . . . (D) the signal word 'WARNING' or 'CAUTION' on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as 'Flammable,' 'Combustible,' 'Vapor Harmful,' 'Causes Burns,' 'Absorbed Through Skin,' or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided . . . (G) instruction, when necessary or appropriate, for first-aid treatment; . . . (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement . . . (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, and (2) on which any statements required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the label."

15 U.S.C. § 1261(p).

51.     Accordingly, Defendant had a duty to investigate and disclose all safety hazards regarding the Pools, including the Defect.

52.     As a direct result of Bestway's conduct, Plaintiff and the proposed class members suffered economic losses by purchasing the Pools at a price premium. Had Plaintiff and Class Members known the truth about Defendant's mislabeled and defective Products, they would not have purchased them or paid less for them.

## TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS

53.     Defendant has continuously marketed and sold the dangerous Product to unsuspecting customers. It continuously represented that the Product is safe and suitable for use.

54.     By continuously repeating these false representations and failing to disclose that the Product contained a life-threatening drowning hazard, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

55. As the creator and manufacturer of the Product, Defendant has had actual knowledge since at least 2011 that the Product is defectively designed and exposes children to a significant risk of serious injury and death.

56. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and reports of at least nine deaths as a direct result of the Product.

57. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Product, and yet Defendant knowingly continued to allow the sale of the Product. Plaintiff's and other Class Members' claims are not time-barred.

58. Moreover, even after the Recall, there is no evidence that news of the Recall Notice reached all Product owners.

59. Plaintiff and other Class members could not have reasonably discovered and could not have known facts that would have caused a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about a dangerous defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations should apply.

60. Throughout the time period relevant to this action, Defendant concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Defect described herein.

61. Defendant kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

62. Defendant had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Product, that the Product has a uniform dangerous Defect, and that it poses safety concerns and is in fact dangerous.

63. Instead, Defendant continued to market the Product as suitable for its intended purpose to further profit from the sale of its popular Pool product and prevent Plaintiff and other Class members from seeking redress.

64.     Plaintiff and the other Class Members justifiably relied on Defendant to disclose the true dangerous nature of the Product they purchased and/or owned because that Defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

65.     Defendant's affirmative acts of concealment, including its continued marketing of the Defective Product as safe, reliable, and fit for its intended purpose while possessing knowledge of the hazard, further support estoppel and tolling of any applicable limitations period.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action on behalf of herself and the following Classes under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

**Multi-State Sub-Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Sub-Class"):** All persons who purchased the Product for personal use and not for resale during the fullest period allowed by law in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Illinois; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

and

**Multi-State Sub-Class (Consumer Fraud Acts) ("Multi-State Consumer Fraud Acts Sub-Class"):** All persons who purchased the Product for personal use and not for resale during the fullest period allowed by law in the following States: California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York or Washington.[30]

and

**Illinois Sub-Class:** All persons in Illinois who purchased the Product for personal use and not for resale during the fullest period provided by law.

67.     Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the

---

[30] While discovery may alter the following, the states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349 and 350); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Hazard with Defendant.

68. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

69. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

70. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether the Product contained the Defect alleged herein;

    b. Whether Defendant knew or should have known of the Defect;

    c. Whether Defendant had to disclose the Defect to consumers;

    d. Whether Defendant's conduct violated the ICFA and other consumer protection statutes alleged herein;

    e. Whether Defendant's representations and omissions were misleading or deceptive;

    f. Whether Defendant's conduct was unfair or illegal;

    g. Whether Class Members suffered economic injury;

h.  Whether Defendant's conduct violates public policy;

i.  Whether Plaintiff and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

j.  Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Product; and

k.  Whether Plaintiff and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief;

71.  **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Product, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive omissions concerning the Product's safety and its ability, as well as the proposed repair remedy's ability, to function as intended.

72.  **Adequacy**. Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiff has retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and her counsel are committed to the vigorous prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of putative Class.

35.  **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would

cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

36.     **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a.     The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b.     Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c.     The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d.     Individual joinder of all members of the Class is impracticable;

e.     Absent a Class, Plaintiff and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f.     This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient method by which Plaintiff and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

37.     In the alternative, the Class may be certified for the following reasons:

a.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual

members of the Class, which would establish incompatible standards of conduct for Defendant; and

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF STATE CONSUMER FRAUD ACTS
**(On behalf of Plaintiff and the Multi-State Consumer Fraud Acts Sub-Class)**

78. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79. Plaintiff brings this Count on behalf of herself and the Multi-State Consumer Fraud Acts Sub-Class against Defendant.

80. The Consumer Fraud Acts of the States in the Multi-State Consumer Fraud Acts Sub-Class prohibit unfair or deceptive business practices in trade or commerce.

81. Plaintiff and the other Members of the Multi-State Consumer Fraud Acts Sub-Class have standing to pursue a cause of action for violations of the Consumer Fraud Acts of the states in

the Multi-State Consumer Fraud Acts Sub-Class because they have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

82. Defendant engaged in unfair and/or deceptive conduct by making material representations about the Product's safety and omissions regarding the Pool's life-threatening dangers, as discussed herein.

83. Defendant deliberately engaged in unfair and deceptive conduct with the intent to mislead Plaintiff and every other Member of the Multi-State Consumer Fraud Acts Sub-Class, knowing that a reasonable person would rely on and be deceived by such conduct.

84. Leveraging its established reputation as a trusted national and international brand, Bestway misled Plaintiff and reasonable consumers into relying on false claims about the safety of its pools, knowingly omitting critical safety information.

85. Due to Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and the other Members of the Multi-State Consumer Fraud Acts Sub-Class have sustained damages in an amount to be proven at trial.

86. In addition, Defendant's conduct showed malice, motive, and reckless disregard for the truth, so an award of punitive damages is appropriate.

## COUNT II
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE TRADE PRACTICES ACT 815 ILCS 505/1, *et seq.* ("ICFA")
(On Behalf of Plaintiff and the Illinois Sub-Class)

73. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

74. Plaintiff brings this Count on behalf of herself and the Illinois Sub-Class against Defendant, Bestway.

75. Plaintiff and other Class Members are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1(c).

76.     Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

77.     At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

78.     Plaintiff and the proposed Class are "consumers" who purchased the Products for personal, family or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

79.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices … in the conduct of any trade or commerce…." ICFA, 815 ILCS 505/2.

80.     The ICFA prohibits any deceptive, unlawful, **_unfair_**, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS § 505/2.

81.     Plaintiff and the other Illinois Sub-Class Members reasonably relied upon Defendant's representation that the Products were safe for personal use and did not present a drowning hazard. Additionally, Defendant concealed the life-threatening Defect even after knowing of prior drowning incidents at its Pools and its competitors' pools of similar build and structure.

82.     Defendant's conduct, as described herein, took place within the State of Illinois and constitutes **_unfair_** or deceptive acts or practices in trade and commerce, violating 815 ICFA 505/1, _et seq._

83.     Defendant violated the ICFA by representing that the Products have characteristics or benefits that they do not have. 815 ILCS § 505/2; 815 ILCS § 510/2(7).

84.     Defendant did not intend to sell the products as advertised, in violation of 815 ILCS § 505/2 and 815 ILCS § 510/2(9).

85.     Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or misunderstanding in violation of 815 ILCS § 505/2; 815 ILCS § 510/2(3).

86.     Prior to placing the Pools into the stream of commerce and the hands of consumers, Defendant knew or should have known that the Pools contained the life-threatening Defect. Still, Defendant failed to test and quality-check its Products properly and further misrepresented, omitted, and concealed this fact to consumers, including Plaintiff and Class members, by not warning about the drowning hazard inherent in the placement of its external compression straps.

87.     Plaintiff and Class Members have been damaged economically as a proximate result of Defendant's violations of the ICFA, and have suffered damages as a direct and proximate result of purchasing the Products.

88.     As a direct and proximate result of Defendant's violations of the ICFA, as set forth above, Plaintiff and the Illinois Sub-Class Members have suffered ascertainable losses of money caused by Defendant's misrepresentations and material omissions regarding the drowning hazard inherent to the Pools.

89.     Had they been aware of the life-threatening nature of the Pool, Plaintiffs and Class Members either would have paid less for the Products or would not have purchased them at all.

90.     While the joint Recall Notice was placed on July 21, 2025, Defendant has yet to provide any monetary remedy for its ICFA violations stated herein.

91.     Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Sub-Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorney's fees, under 815 ILCS 505/10a.

## COUNT III
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of Plaintiff and the Multi-State Implied Warranty Sub-Class or, in the alternative, the Illinois Sub-Class)

92.     Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

93.     Plaintiff brings this Count on behalf of herself and the proposed Multistate Implied Warranty Subclass Class, or in the alternative, the Illinois Sub-class ("Class").

94.     Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Product.

95.     The Product was and is, at all relevant times, a "good" within the relevant laws.

96.     Defendant knew or had reason to know of the specific use for which the Product, as goods, was purchased.

97.     Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Product to be used by Plaintiff and the proposed Class Members.

98.     Defendant provided Plaintiff and the proposed Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which the Product was used and sold and was not otherwise injurious to consumers, that the Product would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiff and Class Members.

99.     Defendant breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of being a reasonably safe place for people to use, climb in, and swim in as intended. The Product contains the Defect, rendering the Product unsafe to use as intended. Therefore, the Product is not fit for its particular purpose.

100.    As instructed by the Recall Notice, Plaintiff is forced to completely discontinue use of the Product due to the ongoing safety risk of the drowning hazard.

101.    The aforementioned problems associated with the Product constitute safety risks, such that the Product is neither safe nor suitable for children to play in or around. Therefore, there is a breach of the implied warranty of merchantability.

102.    Moreover, due to the inadequate and overdue nature of the Recall, it is not required and would be futile for Plaintiff to provide Defendant further opportunity to cure their breach.

103.    Plaintiff and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiff and each Class Member, on the other hand.

104.    Nevertheless, privity is not required because Plaintiff and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiff and Class Members were the intended beneficiaries of the Product. Thus, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Product and its warranties.

105.    Defendant impliedly warranted that the Product was safe, suitable for children to play in and around, of merchantable quality, and fit for their intended purpose. These implied warranties included, among other things: (i) a warranty that the Product manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to play in and around; (ii) a warranty that the Product would be fit for its intended use while the Product is being used; and (iii) a warranty that the Product would conform to all of the promises and affirmations of fact on the Product's label and online advertising.

106. Instead, the Product contains a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Product fails to conform to the promises or affirmations of fact on its label and online advertising.

107. Defendant failed to adequately warn Plaintiff and Class Members that the Product contained the Defect, was not safe or suitable for use, and could and have caused children to drown or suffer serious injuries.

108. Defendant breached the implied warranties because the Product was and is sold with the Defect.

109. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

110. Plaintiff and Class Members had no meaningful choice in determining the terms of that unreasonably favored Defendant, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Product. A gross disparity in bargaining power existed between Defendant and Plaintiff and the Class Members, and Defendant knew or should have known that the Product was defective at the time of sale.

111. Contrary to the applicable implied warranties, the Product, at the time of sale and thereafter, was not fit for its ordinary and intended purpose. Instead, the Product suffered, and continues to suffer, from the Defect as alleged herein.

112. Defendant's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

113. As a direct and proximate result of the foregoing, Plaintiff and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IV**
**UNJUST ENRICHMENT/QUASI-CONTRACT**
**(On Behalf of Plaintiff and the Illinois Sub-Class)**

114. Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

115. Plaintiff brings this Count on behalf of herself and the proposed Class.

116. Plaintiff and the putative Class Members conferred a benefit on Defendant by purchasing the Product—payments that Defendant knowingly accepted while aware of the product's defect and unfitness for its intended use.

117. Defendant either knew or should have known that the payments rendered by Plaintiff and Class Members were given with the expectation that the Pool would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

118. By its wrongful acts and omissions described herein, including selling the Product, which contained both a Defect and was inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members. The Pool could not even be assembled and filled with water, as it would inherently become a drowning hazard.

119. Defendant's wrongful conduct directly caused Plaintiff's detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

120. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiff and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Product, as such enrichment was directly tied to the misconduct alleged herein.

121.    Defendant was unjustly enriched by retaining revenues from Class Members' purchases of the Product. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Product while omitting material facts, causing Plaintiff and Class Members to purchase products they otherwise would not have bought had the truth been disclosed.

122.    Defendant continued to manufacture the Product with its inherent Defect even after knowing—and concealing—at least three incidents that occurred over 2 decades ago. Even after these known incidents, Defendant continued to tout the safety of its Product, considerably profiting for decades.

123.    Defendant's conduct allows it to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiff and Class Members, and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity, and good conscience principles.

124.    Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

125.    Plaintiff and Members of the Classes seek disgorgement of all profits resulting from such overpayment.

**COUNT V**
**NEGLIGENT MISREPRESENTATION**
**(Plaintiff Individually and on Behalf of the Illinois Sub-Class)**

126.    Plaintiff hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

127.    Plaintiff brings this Count individually and on behalf of Illinois Sub-Class.

128.    As a seller of the Product, Defendant had a duty to give correct information to Plaintiff and Class Members regarding the truth and accuracy of the material facts concerning the serious

safety risks posed by the Product, including knowledge of the Defect. Defendant had sole possession and control of this information and had a duty to disclose it accurately to Plaintiff and Class Members.

129.     Defendant created a special relationship with Plaintiff and Class Members through its misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing, and selling the Product as a product specifically suitable for people, including children to use, climb in, and swim in.

130.     Defendant intended the sale of the Product not only to affect Plaintiff and Class Members, but Defendant actually considered the particular needs of consumers and designed, manufactured, and sold the Product for those consumers to meet their particular needs.

131.     Defendant held or appeared to hold unique or special expertise and knowledge of pools. Defendant and Plaintiff, as well as Class Members, had a special relationship of trust and confidence, and Defendant persuaded Plaintiff and Class Members to purchase the Product based on their misrepresentations and reputation of having expertise and knowledge.

132.     Defendant affirmatively misrepresented and omitted material facts regarding the Product's safety, including but not limited to explicit or implicit assurances that the Product was safe and suitable for use. These false and misleading representations were made for the express purpose of inducing Plaintiff and Class Members to purchase the Product. Defendant knew or should have known that the Product posed serious safety risks, and yet marketed and sold it as appropriate for use by children, thereby misleading reasonable consumers into believing it met applicable safety standards.

133.     Because the Defect in the Product could not be detected until after it manifested, and because Defendant purposefully concealed the defective nature of the Product and the serious safety risks caused by the Defect, Plaintiff and the Class Members were not reasonably able to discover the Defect, despite their exercise of due diligence.

134.     Defendant knew, or otherwise should have known, that the Product contained the Defect and posed serious safety risks based upon: (1) Defendant's own internal testing, data, and surveys; (2) Defendant' Recall; (3) the multiple incident reports dated from 2007; and (4) the $25 million lawsuit in 2019 for the drowning of the 2-year-old girl that Defendant was found liable.

135.    Despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Product, Defendant actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

136.    Defendant omitted, concealed, and failed to disclose to consumers that the Product poses serious safety risks to children, including that the Product's design is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Defendant marketed the Product as safe and suitable for their intended purpose.

137.    The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Product, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Product. Rather than disclose this information, Defendant marketed the Product as complying with safety standards and regulations, with the utmost manufacturing and design.

138.    Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Product.

139.    Plaintiff and other Class Members, without knowledge of the true nature of the Product, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchase of the Product.

140.    As a direct and proximate result of Defendant's concealment and/or nondisclosure of material facts, consumers, including Plaintiff and other Class Members have been damaged as alleged herein, and are entitled to recover damages. Plaintiff and other Class Members would not have purchased the Product on the same terms had they known that it posed serious safety risks to their infants.

141.    Plaintiff and Class Members are entitled to all relief the Court finds proper as a result of Defendant's conduct described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully

requests that this Court:

a.      Declare that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Award Plaintiff and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

c.      Declare that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Pool;

d.      Order Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

e.      Award punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect;

f.      Order such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims so triable.


DATED: August 12, 2025               Respectfully submitted,

*/s/Kevin Laukaitis*
Kevin Laukaitis
Maria de los Angeles Lugo Colom
Daniel Tomascik
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com
mcolom@laukaitislaw.com

Mason A Barney
Leslie Pescia
**SIRI & GLIMSTAD LLP**
745 Fifth Ave., Suite 500
New York, NY 10151

Phone: (212) 532-1091
mbarney@sirillp.com
lpescia@sirillp.com

*Attorneys for Plaintiff & Putative Class Members*